IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PATRICK BOUVIER JOHNSON,      )
      Plaintiff,                )
                           )
          v.                    )          Civil Action No. 3:23CV679 (RCY)
                           )
HENRICO COUNTY BOARD OF       )
SUPERVISORS, *et al.*,        )
      Defendants.               )
_____)

## MEMORANDUM OPINION

*Pro se* Plaintiff Patrick Bouvier Johnson brings this action for damages and to enjoin Henrico County's enforcement of certain zoning ordinances that interfere with his desired use of his property.   Jurisdiction is appropriate based on the federal questions raised.   The matter is before the Court for disposition of a Motion for Preliminary Injunction and Motion for Leave to File Amended Complaint filed by Plaintiff, as well as a Motion to Dismiss filed by Defendant Henrico County Board of Supervisors.    The Court dispenses with oral argument because the facts and contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process.    E.D. Va. Loc. Civ. R. 7(J).

Finding that Plaintiff has failed to establish that he is entitled to the extraordinary relief of a preliminary injunction, and for similar reasons finding that he has failed to state a claim, the Court will deny Plaintiff's Motion for Preliminary Injunction and grant the Defendant's Motion to Dismiss.    Further finding that the proposed amended complaint does not cure the deficiencies of the presently controlling complaint and otherwise similarly fails to state a claim, the Court will also deny the Motion for Leave to Amend.

# I.  PROCEDURAL HISTORY

Plaintiff filed his *pro se* Complaint in this Court on October 19, 2023.    ECF No. 1.    After Defendant Henrico County Board of Supervisors ("Board of Supervisors" or "the Board") filed a Motion to Dismiss, ECF No. 4, Plaintiff timely filed an Amended Complaint, ECF No. 6, which mooted the pending Motion to Dismiss, *see* Order, ECF No. 9.    Plaintiff then filed a Motion for Preliminary Injunction, ECF No. 13, on December 8, 2023.[1]

Also in December, Defendant filed a Motion to Dismiss First Amended Complaint, ECF No. 15, and an Opposition to the Motion for Preliminary Injunction, ECF No. 18.    Plaintiff filed a Reply,[2] ECF No. 20, and a "Motion" (Response) in Opposition to the Motion to Dismiss, ECF No. 23, in early January.    Plaintiff then filed a fourth Motion for Leave to File Amended Complaint ("Fourth Motion to Amend"), ECF No. 25, accompanied by yet another proposed amended complaint.    Defendant filed an Opposition to the Fourth Motion to Amend, ECF No. 26, to which Plaintiff replied with a Response to Defendant's Opposition ("Reply Supp. Mot. Amend"), ECF No. 27, on January 31, 2024.    Defendant filed no reply in support of its Motion to Dismiss, and the time to do so has passed.

The Court refrained from immediately engaging with Plaintiff's Motion for Preliminary Injunction in light of the fact that Plaintiff had yet to serve one of the named Defendants, Lisa

---

[1] Plaintiff also subsequently filed two [Motions for] Leave to File Second Amended Complaint, ECF Nos. 11, 12, which each were accompanied by a proposed amended complaint "amend[ing] minor errors and omission[s] found in [the] first amended complaint."    Mot. for Leave 1, ECF No. 11.    After Defendant filed a Response in Opposition to the proposed amendment(s), ECF No. 17, Plaintiff filed for leave to withdraw the requests to amend, ECF No. 19, which the Court granted, *see* ECF No. 21, thereby affirming the first Amended Complaint, ECF No. 6, as the operative complaint for all purposes moving forwards.    The protracted confusion regarding which document was intended to be the operative complaint in this action and Plaintiff's long-term failure to serve the individual defendant in this action, *see infra* n.4, delayed the Court's consideration of Plaintiff's Motion for Preliminary Injunction.

[2] Plaintiff technically filed a "Motion in Response to Defendant's Opposition," which the Court directed all parties to construe as a Reply.    *See* Order, ECF No. 22.    Accordingly, the Court will cite this document as "Reply Supp. Prelim. Inj." throughout this Memorandum Opinion.

Brown.   *See* Fed. R. Civ. P. 65(a)(1) "The court may issue a preliminary injunction *only* on notice

to the adverse party." (emphasis added)).   However, the time for Plaintiff to do so expired on

March 4, 2024, *see* Am. Compl. (adding Brown as a Defendant; filed on December 5, 2024); Fed.

R. Civ. P. 4(m) (providing ninety days for service).   On April 3, 2024, having still not served

Defendant Brown, Plaintiff filed a Request for Expedited Preliminary Injunction Decision.   ECF

No. 29.   The Court obliged and on April 5, 2024, issued an Order Denying Plaintiff's Motion for

Preliminary Injunction, promising an opinion to follow.   ECF No. 30.   This Memorandum

Opinion satisfies that promise.

## II.   FACTUAL ALLEGATIONS

Plaintiff purchased two parcels of land in Henrico County, Virginia, in 2013, with the intent

to use the land for agricultural production.   Am. Compl. 1.   The parcels, which are located at 11

Early Avenue and 21 Early Avenue, Sandston, VA 23150, were situated in a residential area

"zoned R-3 one family residence district."   *Id*. at 2.   Despite this residential zoning, the property

"is designated on the comprehensive plan for Commercial Concentration"—to that effect, it is

bordered on two sides by residences and on the other two sides by businesses.   *Id*.   The then-

applicable zoning ordinance allowed "'farming' as a principal permitted use in the R-0 through R-

4A One [F]amily Residence Districts."   *Id*.   Based on this zoning, Plaintiff mailed the Henrico

County Planning Department notice of his intended farming-oriented changes to the property and,

after receiving no response, began clearing the property in August of 2014.   *Id*. at 4–5.   Plaintiff

has been growing fruits and vegetables on the land (hereinafter, "Farm") since that time.   *Id*. at

4, ¶ 1.

Sometime in 2019, Plaintiff received a call from County Manager John Vithoulkas, who

stated that he was going to condemn Plaintiff's Farm.   *Id*. ¶ 2.   Plaintiff asked for a meeting with

Mr. Vithoulkas, and at the subsequent meeting he discussed with Mr. Vithoulkas the fact that there was no evidence that Plaintiff's Farm was negatively impacting property values in the area.   *Id*. Also in 2019, Plaintiff met with then-Chairman of the Henrico County Board of Supervisors ("Board"), Tyrone Nelson, and the Board representative for the district encompassing Plaintiff's Farm, to discuss various "abuses [Plaintiff] had suffered," to include: "illegal actions by the police, Community Revitalization official giving the Plaintiff false and misleading information; refusal of Planning and Zoning official to answer questions as to how the property could be developed as an agricultural property; harassing phone calls [and] false complaints from neighbors" and "white supremacists."   *Id*. ¶ 3; Am. Compl. Ex. B, ECF No. 6-2.   Plaintiff also "inquir[ed] about changes to zoning that could affect [his] ability to use the property."   *Id*.   Plaintiff's takeaway from this meeting was that there would be no zoning changes that would hinder his ability to use his property for agriculture, and he could complete any project he started prior to any zoning changes.   Am. Compl. Ex. B.   No further action was taken by the County or the Board at that time.   *See generally id*.

In April of 2021, Plaintiff met with Mr. Vithoulkas and Joseph Emerson, Director of Planning, at which time Mr. Emerson "confirmed that the property was being used for Agriculture" and that the zoning permitted "up to 7200 square[foot] agricultural structures per parcel without a permit."   Am. Compl. 5, ¶ 4.   Mr. Vithoulkas "also stated that the Plaintiff could install a gravel parking lot and sell produce from the property. . . . [and] that the Plaintiff would not have to install a convert[,] which was in keeping with other businesses in the area."   *Id*.

On September 1, 2021, a new Henrico County Zoning Ordinance took effect.   *See*, *e.g.*, *id*. ¶ 16; *see also* Zoning Ordinance, Henrico County Code §§ 24-1101 through 24-8501, *available*

*at* https://henrico.us/pdfs/countyattorney/Chpt024Zoning.pdf [3] (showing "Effective" date of September 1, 2021).   Whereas the prior zoning ordinance included "farming" among the "allowed uses" for R-3 One-Family Residence District properties, *see* Am. Compl. 2, the 2021 revised ordinance only lists "one-family dwellings" and "supporting institutional, recreational, and public facilities and uses" as "[a]llowed uses" in the R-3 zone.   Zoning Ordinance § 24-3309(A).

In March of 2022, Plaintiff began receiving Notices of Violation ("NOVs") from Henrico County.   Am. Compl. 6, ¶ 5.   Plaintiff successfully disputed two of the NOVs:   one for having left bags of leaves out (which Plaintiff was reserving for later use as organic mulch), and one for having logs lying about the property (which Plaintiff was using to grow mushrooms).   *Id*.   Later in 2022, however, Plaintiff received another NOV, this one for having "building materials" on the property.   *Id*. ¶ 6.   Plaintiff attempted to dispute this NOV with Community Maintenance Inspector Jason Alexander, arguing that he needed the materials for farm and equipment maintenance and proposing that he build temporary structures to house the building materials.   *Id*. This proposal was rejected, however, and Mr. Alexander told Plaintiff that "[he] was not allowed to build anything."   *Id*.   Plaintiff subsequently "moved the items in question" and did not construct the proposed structures, but it appears that the Farm remained in noncompliance and Plaintiff "was taken to Henrico County District Court in May of 2022."   *Id*.

While the General District Court matter (concerning the building materials issue) was pending, Plaintiff received another NOV, this time for his fence—specifically concerning its height, setback, and construction-material deficiencies.   *Id*. ¶ 7; *see also* Am. Compl. Ex. A, ECF

---

[3]  "A district court may clearly take judicial notice of . . . public records," *Witthohn v. Fed. Ins. Co*., 164 F. App'x 395, 397 (4th Cir. 2006) (affirming the review and consideration of state court records on a motion to dismiss), and may otherwise consider on a 12(b)(6) analysis documents incorporated into the complaint, *Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308, 322 (2007), and documents that are "integral to and explicitly relied on in the complaint," *Phillips v. LCI Int'l*, 190 F.3d 609, 618 (4th Cir. 1999), even if the plaintiff failed to attach such documents.   The Court finds this municipal zoning ordinance to constitute a public record.   In the alternative, it is integral to Plaintiff's Amended Complaint, insofar as the alleged zoning changes give rise to Plaintiff's claims.

No. 6-1 (Sept. 30, 2022 Letter to Plaintiff).   Plaintiff met with County representatives on September 21, 2022, about the "outstanding violations."   Am. Compl. Ex. A.   The September 30, 2022 letter sent in follow-up to this meeting set out the applicable zoning ordinances, including a recognition that "[f]encing built prior to September 1, 2021, is subject to . . . the previous zoning ordinance," and it cautioned that this ordinance applied "regardless of the permitted agricultural use."   *Id.*   It further reiterated to Plaintiff that "outside storage of unused items is prohibited, and the fence located in the front yard will need to be shortened, moved to the side yard, or removed altogether to bring the [Farm] into compliance with the Henrico County code."   *Id.*

Plaintiff asserts that, when he ultimately appeared in General District Court on the building materials violation, the presiding judge informed Plaintiff that, contrary to the statement by the Community Maintenance Inspector, Plaintiff *could* build structures and further "*encouraged* the Plaintiff to do so."   Am. Compl. 7, ¶ 7 (emphasis added).   According to Plaintiff, "[t]he case against [him] was eventually dismissed."   *Id.*; *see also* Case Details, Case No. GC22018403-00 (Henrico Cnty. Gen. Dist. Ct., May 4, 2022).[4]   In reliance on the statements from the General District Court judge, Plaintiff constructed two temporary sheds and accepted funding from the Natural Resource Conservation Service (NRCS) to construct a "high tunnel."[5]   Am. Compl. 7, ¶ 7.

It was at the time Plaintiff began constructing the high tunnel that he learned[6] "that Henrico had changed his zoning from an agricultural use to nonconforming use."   *Id.*   Plaintiff alleges

---

[4] The Court properly takes judicial notice of these state court records and any other state court records cited *infra*.   *Witthohn*, 164 F. App'x at 397.

[5] Plaintiff represents a high tunnel to be a "greenhouse-like structure."   Am. Compl. 7, ¶ 7.

[6] Although the Complaint is not explicit, the Court infers that Plaintiff "found out" about the alleged zoning change through receipt of another NOV challenging his construction of the high tunnel and/or other structures.   *See id.* ("Plaintiff has appealed both the having to remove the fence and the other structures to the Board of Zoning Appeals and currently to Henrico Circuit Court."); *see also id.* at 11, ¶ 15 (". . . the subject comparison property . . . has not been ordered or asked to remove or tear down its agricultural structures.").

that he received no prior notification of the zoning change.  *Id*. ¶ 20.   At a subsequent Board of Zoning Appeals ("BZA") hearing on July 27, 2023, Henrico County Zoning Administrator Benjamin W. Blankenship commented that Plaintiff's Farm was in an area that had been "zoned 'commercial concentration'" since 2009.  *Id*. ¶ 8.   Plaintiff asserts that this statement is "outrageous and erroneous."  *Id*.   Plaintiff appealed the BZA's ultimate July 27, 2023 decision, as well as an earlier decision from April, to the Henrico County Circuit Court.[7]  *Id*. ¶ 7; *see also* Case Details, IN RE: April 27, 2023 Decision, Case No. CL23003794-00 (Henrico Cnty. Cir. Ct., May 26, 2023); Case Details, IN RE: July 27, 2023 Decision, Case No. CL23005834-00 (Henrico Cnty. Cir. Ct., Aug. 25, 2023).   These appeals were not resolved until spring of 2024, approximately five months after Plaintiff filed the instant suit.  *See* Case Details, IN RE: April 27, 2023 Decision (February 9, 2024 dismissal); Case Details, IN RE: July 27, 2023 Decision (March 22, 2024 dismissal).

Separate from his issues with the Board and zoning, Plaintiff alleges various interactions with local police, as well as instances of unwarranted police surveillance of his property in 2015 and 2022.  *Id*. ¶¶ 9–10.   In 2015, a neighbor informed Plaintiff that "he saw Mr. Russell Teague[8] standing with a police officer on the street outside the Plaintiff['s] farm pointing at the main farm building.  Later that same week, the Plaintiff observed the police watching the property."  *Id*. ¶ 9.   A police lieutenant subsequently informed Plaintiff that the Farm had "been under surveillance and that no crime was being committed at the premises."  *Id*.   With respect to the 2022 incident, Plaintiff observed "a large bus type vehicle coming through the neighborhood . . . .

---

[7] The Court is unclear from Plaintiff's Complaint and from available state court records which proceeding related to which NOV, but it can discern that, of the two appeals, one related to the fence issues and the other to Plaintiff's building activities.

[8] While it is unclear what position Mr. Teague may have held at the time of this incident, he appears to currently serve as an Existing Structures Inspector for Henrico County.  *See* Henrico County–Building Inspections Department–Staff Contact List, *available at* https://henrico.us/bldg/personnel/.

The driver of the vehicle would honk[] a loud disturbing horn and on several occasions the Plaintiff notice[d] what appeared to be a single passenger of the vehicle wave at [him]."  *Id.* ¶ 10.  Plaintiff further observed this vehicle parked in the driveway of a neighbor who had been particularly outspoken in complaining about Plaintiff's farming—Defendant Lisa Brown.  *Id.*

### III. STANDARDS OF REVIEW

**A.  Preliminary Injunction**

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'"  *Perry v. Judd*, 471 F. App'x 219, 223 (4th Cir. 2012) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  Such remedy is "never awarded as of right."  *Winter*, 555 U.S. at 24.  The power to issue a preliminary injunction derives from the common law of equity and is frequently described as an "extraordinary" remedy that is left to the discretion of the trial court.  *Id.* (citations omitted); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2941 (3d ed. Oct. 2020).

To be eligible for a preliminary injunction, the party seeking such relief must demonstrate each of the following factors: (1) the likelihood of success on the merits; (2) the likelihood of irreparable harm in the absence of preliminary injunctive relief; (3) the balance of equities between the parties tips in favor of the party seeking such relief; and, (4) granting the injunction is in the public interest.  *Winter*, 555 U.S. at 20; *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reinstated in relevant part, 607 F.3d 355 (4th Cir. 2010).  Plaintiff, as the party seeking a preliminary injunction, bears the burden of establishing that each factor supports granting the injunction.  *Real Truth*, 575 F.3d at 346. Each factor must be demonstrated by a "clear showing."  *Winter*, 555 U.S. at 22.  The failure to

show any one of the relevant factors mandates denial of the preliminary injunction.   *Real Truth*, 575 F.3d at 346.

**B.   Motion to Dismiss**

A motion to dismiss under Federal Rule 12(b)(6) should be granted if a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).    A Rule 12(b)(6) motion "tests the sufficiency of a complaint and 'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"   *Johnson*, 682 F. Supp. 2d at 567 (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).    As such, the Court must accept all factual allegations contained in a complaint as true and draw all reasonable inferences in favor of the plaintiff.   *Id*.    However, pleadings that offer simply "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient to state a claim for relief.   *Twombly*, 550 U.S. at 555.

Generally, the Court does not contemplate extrinsic material when evaluating a complaint on a motion to dismiss.    However, the Court may consider documents incorporated into the complaint, *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007), matters of public record subject to judicial notice, *Philips v. Pitt Cnty. Mem'l Hosp*., 572 F.3d 176, 180 (4th Cir. 2009), and it may also consider any documents attached to the motion to dismiss if those documents are essential to the plaintiff's claims or are "sufficiently referred to in the complaint," as long as there is no challenge of their authenticity.   *Witthohn v. Fed. Ins. Co*., 164 F. App'x 395, 396–97 (4th Cir. 2006).    Moreover, where a plaintiff attaches or incorporates a document into their complaint, it is proper to accept the contents of the document(s) over conflicting allegations in the Complaint.    *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234–35 (4th Cir. 2004).

And, though it is true that pleadings by *pro se* plaintiffs must be held to a less stringent standard than those drafted by lawyers, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the pleadings must nevertheless set forth enough facts to state a claim.

## IV. ANALYSIS

The parties agree that *Winter* controls the preliminary injunction analysis. *See* Def.'s Opp'n Mot. Prelim. Inj. 1, ECF No. 18; Reply Supp. Mot. Prelim. Inj. 1, ECF No. 20 ("Plaintiff accepts that *Winter* not *Blackwelder* guides the Fourth Circuit with regard to preliminary injunctions . . . ."). As set forth above, to obtain a preliminary injunction, the party seeking such relief must establish all four of the *Winter* factors: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm if preliminary relief isn't granted; (3) the balance of equities favors them; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20; *Real Truth*, 575 F.3d at 346. The failure to establish any single element of the *Winter* test is fatal to a request for preliminary injunctive relief. *Real Truth*, 575 F.3d at 346. Defendant takes the position that, because Plaintiff fails to state a claim on which relief may be granted, he certainly cannot establish likelihood of success on the merits, and for this failure on *Winter*'s very first prong, Plaintiff is not entitled to any relief, let alone injunctive relief.

Because of the interconnectedness of the success-on-the-merits analysis and the Motion to Dismiss (and that of the parties' related briefing), the Court largely considers both together, below. And as the Court ultimately determines that Plaintiff has indeed failed to state any claim on which relief may be granted, the *Winter* analysis will stop there.

## A. Plaintiff is Unlikely to Succeed on the Merits of His Claims

Plaintiff's Amended Complaint sets out the following as his "Legal Claims": (1) a Fourteenth Amendment Equal Protection claim, Am. Compl. ¶¶ 11–15; (2) a Fourteenth

Amendment Substantive Due Process claim, *id*. ¶ 16; (3) a claim for "conspiracy against rights," citing 18 U.S.C. § 241, *id*. ¶¶ 17–18; (4) a "business conspiracy" claim, *id*. ¶ 19; and (5) a Procedural Due Process claim, *id*. ¶¶ 20–26.   In line with the very first sentence of the Amended Complaint, the Court construes Plaintiff's equal protection and due process claims as claims brought pursuant to 42 U.S.C. § 1983, which is the vehicle by which an individual may sue state actors for violations of constitutional rights.   *See* Am. Compl. at 1 ("Comes now Plaintiff Patrick Johnson, pursuant to 42 U.S.C. § 1983, and files this Complaint . . . .").   And while Plaintiff cites an inapposite criminal statute as the basis for his "conspiracy against rights" claim and no legal basis whatsoever for his "business conspiracy" claim, out of deference to his *pro se* status, the Court construes these as claims brought pursuant to 42 U.S.C. § 1985(3), which creates a private right of action for individuals who suffer from a conspiracy to deprive them of the equal protection of the laws.[9]

On this first *Winter* prong, Defendant argues that Plaintiff is unlikely to succeed on the merits because the purported claims are barred by the applicable statute of limitations and because Plaintiff fails to state a claim on any of the counts set forth in the Amended Complaint.   While the Court is not convinced that Plaintiff's claims are necessarily time-barred, the Court does agree that the facts alleged in Plaintiff's Amended Complaint fail to state any claim upon which relief may be granted, and consequently neither can they establish that Plaintiff is likely to succeed in litigating the merits of such claims.

---

[9] Although Plaintiff does not explicitly rely on 42 U.S.C. § 1985 in his Amended Complaint, in his Reply in support of the Motion for Preliminary Injunction he does cite "§ 1985(C)"—which the Court interprets a cite to § 1985(3)—as a basis for his third and fourth claims.   *See* Reply Supp. Mot. Prelim. Inj. 3.   And while a party generally may not amend their complaint through subsequent briefing, *see Hurst v. District of Columbia*, 681 F. App'x 186, 194 (4th Cir. 2017), out of deference to Plaintiff's *pro se* status and for ease of analysis the Court will accept and apply the § 1985 legal framework for these claims.

1.   Statute of Limitations

Defendant posits that "[a]ll of the causes of action alleged in the Amended Complaint are governed by Virginia's 2-year statute of limitations."   Def.'s Opp'n Mot. Prelim. Inj. 2. Defendant further traces all of Plaintiff's claims back to the adoption of Henrico County's revised zoning ordinance, which took effect on September 1, 2021.   *Id.*   Because two years from that date would be September 1, 2023, and Plaintiff did not file suit until October of 2023, Defendant argues that Plaintiff's claims are time-barred.   To counter this, Plaintiff argues that because his claims are rooted in an ongoing conspiracy and the harm he suffered continued through the limitations period, the statute of limitations should be deemed tolled.   Reply Supp. Prelim. Inj. 2.

"[Title 42 of the United States Code,] § 1983 does not contain a statute of limitations, so § 1983 claims are governed by 'the statute of limitations from the most analogous state-law cause of action.'"   *Reid v. James Madison Univ.*, 90 F.4th 311, 318 (4th Cir. 2024) (quoting *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 388 (4th Cir. 2014)).   The same goes for claims premised upon § 1985.   "[V]iolations of [federal civil rights laws] are 'constitutional torts'. . . . This 'constitutional tort' theory underlies the rationale of *Almond v. Kent*, 459 F.2d 200 (4th Cir. 1972), and every other civil rights case in Virginia, all of which have applied a two year statute of limitations."   *Harris v. Obenshain*, 452 F. Supp. 1172, 1176–77 (E.D. Va. 1978) (citing *Bulls v. Holmes*, 403 F. Supp. 475 (E.D. Va. 1975); *Van Horn v. Lukhard*, 392 F. Supp. 384 (E.D. Va. 1975)); *accord Reid*, 90 F.4th at 318 (citing *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991)) (applying Virginia's statute of limitations for personal injury to a § 1983 claim); *Richardson v. Prince William Cnty.*, 2018 U.S. Dist. LEXIS 12387, at *5 (E.D. Va. Jan. 24, 2018) ("Plaintiff alleges generally that Defendants conspired to interfere with his federal rights. Claims brought under 42 U.S.C. § 1985 are subject to a two year statute of limitations.").

Accordingly, the Court agrees that Plaintiff's claims are all subject to Virginia's two-year statute of limitations for personal injury claims.[10]

This determination gives rise to the question, when did Plaintiff's claims accrue? "Although state law determines the length of the limitation period, accrual of § 1983 [and § 1985] claims . . . is governed by federal law." *Reid*, 90 F.4th at 319 (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal*., 522 U.S. 192, 201 (1997). "Under federal law's 'standard rule' of accrual, which is informed by common-law tort principles, a plaintiff's claim accrues when [he] has a 'complete and present cause of action.'" *Id*. (quoting *Wallace*, 549 U.S. at 388). "In other words, 'a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Id*. (quoting *Nasim v. Warden, Md. House of Corr*., 64 F.3d 951, 955 (4th Cir. 1995) (alterations omitted)).

Defendant points to no facts in the Amended Complaint that suggest Plaintiff was aware of the revised zoning ordinance's impact upon his use of his property—and thus of the harm he allegedly suffered—as of September 1, 2021 (the ordinance's effective date and Defendant's proposed start-date for the running of the statute of limitations). Rather, the Amended Complaint suggests that Plaintiff was not aware of the revised zoning ordinance's impact upon his property until at least March of 2022, and possibly even sometime after May of 2022, when Plaintiff began construction on his high tunnel. *See* Factual Allegations, *supra* Part II (Plaintiff discussed

---

[10] The Court acknowledges that, in his Opposition to Defendant's Motion to Dismiss, Plaintiff "re-asserts that this is a business conspiracy" and argues that his claim should be governed by Virginia's five-year statute of limitations applicable to Virginia Code § 18.2-500, Virginia's business conspiracy statute. Pl.'s Opp'n Mot. Dismiss 2, ECF No. 23. While that might appear based on its title to be an analogous statute, it does not carry the day, given that the Court is construing Plaintiff's business conspiracy claim as a § 1985(3) claim. *See supra* n.9. The business-related facts underpinning Plaintiff's conspiracy claim are of secondary importance when determining what is "the most analogous state-law *cause of action*" for purposes of determining the applicable statute of limitations. *Reid*, 90 F.4th at 318. Based on the nature of Plaintiff's allegations and the overwhelming weight of Fourth Circuit caselaw applying "constitutional tort" theory with its personal injury analog, the Court declines to deviate here.

possible upcoming changes with county representatives and was satisfied that his farm-use would not be impacted, and he did not receive any NOVs after the effective date of the new ordinance until March of 2022); Am. Compl. at 7, ¶ 7 ("Plaintiff only found out that Henrico had changed his zoning from an agricultural use to nonconforming use when the Plaintiff began construction on the high tunnel.").   On that basis, the Court need not determine whether or not tolling is appropriate, as it is not apparent on the face of the Amended Complaint that the statute of limitations had expired as of the date Plaintiff brought suit.   The Court will therefore not dismiss Plaintiff's claims on statute of limitations grounds.

      2.  <u>Failure to State a Claim</u>

The Court turns next to Defendant's argument that Plaintiff is unlikely to succeed on the merits of his claims because he fails to state any claim on which relief may be granted.   In making this argument, Defendant incorporates its earlier-filed Memorandum in Support of its Motion to Dismiss, which argues in more detail about the perceived deficiencies of Plaintiff's Amended Complaint.   Plaintiff's rebuttal briefs do their best to preserve Plaintiff's claims, but ultimately the Court must conclude that the Amended Complaint fails to state any viable claims.   The Court takes each of Plaintiff's claims in turn.

      *a.  Count One: "Class of One" Equal Protection Claim*

Plaintiff bases Count One on a "Class of One" theory of discrimination.   Am. Compl. ¶ 14.   Plaintiff asserts that "[t]he passage of [the] nonconforming use ordinance by Defendants[11] Thornton and Nelson" impermissibly singled him out for discrimination.   *Id.* (citing *Yick Wo v. Hopkins*, 118 U.S. 356 (1886).   Plaintiff offers as a comparator "Tiny Acre Farm," also in Henrico

---

[11] The Court notes that Thornton and Nelson, though named as defendants in the original Complaint, were dropped from the named defendants in the Amended Complaint, and as such are no longer defendants in this action. *Compare* Compl. 1, 3–4, ECF No. 1, *with* Am. Compl. 1, 3–4, ECF No. 6.   Plaintiff did not update his allegations to reflect this change in party status.

County, which allegedly has "similarly situated fencing, similar agricultural structure build[ings] for the storage, handling, production, display, sampling or sale of agricultural, horticultural, floricultural or silvicultural products produced in the farm and storage of supplies and materials used on the farm." *Id*. ¶ 15.   Plaintiff further alleges that "[b]oth properties are of a similar size, and similarly located with both commercial and residential properties bordering their agricultural use." *Id*.   Despite these similarities, Plaintiff asserts that "the subject comparison property has not been targeted by Henrico Zoning ordinances, and . . . has not been ordered or asked to remove or tear down its agricultural structures." *Id*.   Plaintiff attached photos as evidence in support of the comparison between his property and Tiny Acre Farm.   Am. Compl. Ex. D, ECF No. 6-4. The Court also takes notice of Plaintiff's Exhibit C to the Amended Complaint, ECF No. 6-3,[12]  which Plaintiff describes as an excerpt "from the April 27, 2023 [BZA] Meeting where Henrico Senior Attorney Sean O'Hara all but admitted the existence of a conspiracy between Henrico and [Plaintiff's] 'neighbors.'"   Mem. Supp. Mot. Prelim. Inj. 2, ¶ 1.   This document does indicate that at least some of the relevant zoning changes were "initiated and supported by the neighbors of the subject property."   Am. Compl. Ex. C.[13]

Defendant argues that the Amended Complaint "fails to allege anything other than conclusory assertions of similarity to another property, fails to allege that [Plaintiff's] property and the comparison are similarly situated in material respects, and also fails to negate rational bases

---

[12] This document also appears as Exhibit F to the Memorandum in Support of Plaintiff's Motion for Preliminary Injunction.

[13] As further evidence in support of his class-of-one claim, Plaintiff also points to Zoning Administrator Blankenship's allegedly mistaken comment that Plaintiff's property was zoned "Commercial Concentration", *see* Am. Compl. ¶ 14, but the Court fails to see how this comment ties into the necessary showing, as articulated above. Moreover, allegations elsewhere in Plaintiff's Amended Complaint appear to validate Administrator Blankenship's statement.   *See* Am. Compl. 2 ("Although the property is zoned R-3, it is designated on the comprehensive plan for Commercial Concentration.").   As a result, the Court cannot find that Administrator Blankenship's statement gives rise to any plausible inference in support of Plaintiff's claim.

for the purported difference in treatment that are apparent on the face of the Amended Complaint." Mem. Opp'n Mot. Prelim. Inj. 2.

A party can bring an equal protection class-of-one claim by showing that it has been "intentionally treated differently from others similarly situated *and* that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (emphasis added). "To establish a class-of-one claim, a person complaining of a zoning decision must . . . 'show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'" *Sas Assocs. 1, LLC v. City Council for the City of Chesapeake*, 91 F.4th 715, 722 (4th Cir. 2024) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)). "Only then can we infer that the decisionmaker's differential treatment was intentional and arbitrary." *Id*. Ancillary to setting out this rule, the Fourth Circuit "underscore[d] that zoning decisions are presumptively the province of local governments" and that "[l]and use decisions like these lie at the core of local governments' historic responsibilities in much the same way that state governments regulate domestic relations and the federal government oversees matters of national security." *Id*. at 720.

Informed by the Fourth Circuit's articulation of the class-of-one pleading standard in *Sas Associates*, the Court must agree with the Defendant. Plaintiff only offers conclusory allegations that his property and Tiny Acre Farm have "similarly situated fencing, similar agricultural structure[s] . . . ," and they "are of a similar size, and similarly located . . . ." Am. Compl. ¶ 15. While Plaintiff does provide photos to support his assertion, they are barely discernable black-and-white images that do not allow for a reasonable assessment of the properties in question. *See* Am. Compl. Ex. D. However, even if the Court were to accept as true the conclusory allegation that the properties are visibly similar, Plaintiff makes no allegation that Defendant was aware of Tiny

Acre Farm, let alone any allegation that Tiny Acre Farm was engaged in highly similar activity compared to Plaintiff[14] and, despite this, did not receive zoning enforcement attention.  *See, e.g.*, Mem. Supp. Mot. Dismiss 7–8 ("Plaintiff notably does not allege that the owner of Tiny Acre [F]arm has attempted to add or modify structures, like fences or high tunnels, following the effective date of the County's new zoning ordinance and in contravention of that new ordinance, as Plaintiff concedes he has done.   Plaintiff does not allege that the owner of Tiny Acre [F]arm improperly stored building materials at its property." (internal citations omitted)).   Accordingly, Plaintiff's allegations about the mere existence of Tiny Acre Farm and the fact that Tiny Acre Farm has not received a corrective notice that it must "remove or tear down its agricultural structures" are insufficient to give rise to a class-of-one claim.

As to Plaintiff's incorporation of the April 27, 2023 BZA excerpt, which cites to Plaintiff's property and land use as a motivating force behind the zoning ordinance revisions, this too fails to give rise to a claim of class-of-one discrimination, as the document explicitly acknowledges that "Plaintiff's '[F]arm' would not be affected by the change because it was established before the Zoning Ordinance was changed, . . . . [and] any fences or walls installed prior to September 2021 are subject to the ordinance in effect at the time of their construction."   Am. Compl. Ex. C.   In other words, despite Plaintiff's reliance on the case, this is not an instance of *Yick Wo*-style targeted discriminatory rulemaking, which "punish[es] in the present petitioner[] what is permitted to others as lawful."   *Yick Wo*, 118 U.S. at 369.   Again, this document does not demonstrate that others similarly situated to Plaintiff have, in contrast to him, been spared zoning enforcement.   In addition, the revised zoning ordinance explicitly left open to the Plaintiff the activities in which he had, through that time, engaged, and simply prohibited an expansion of those activities and/or

---

[14] Specifically with respect to the activities that gave rise to the NOVs Plaintiff received, not the general activities of farming.

imposed on future activities broadly applicable limitations.   *See* Am. Compl. Ex. C (quoted above).   These alleged circumstances therefore do not satisfy the necessary standard for pleading a class-of-one equal protection claim.   For all these reasons, Plaintiff has failed to state a claim, and he is therefore unlikely to succeed on the merits of Count One.

### b.   Count Two: Substantive Due Process Claim

Plaintiff's second claim is that "[t]he actions of the [Defendant] in September of 2021 to classify the [P]laintiff's property as a 'non-conforming property' was an arbitrary, capricious, and irrational act with no reasonable relation to the County's Comprehensive Development Plan . . . ." Am. Compl. ¶ 16; *see also* Mem. Opp'n Mot. Dismiss 3, ECF No. 23.   Quoting from Exhibit C, Plaintiff highlights how "[t]he new Zoning Ordinance, effective September 2021, prohibits farming as a principal use in the One-Family Residence District.   This change was initiated and supported by the neighbors of the subject property."   Am. Compl. ¶ 16.   He argues that the zoning change, originating in "an illegal conspiracy" between his neighbors and the Defendant, is thus "built on a foundation of illegality."   Mem. Opp'n Mot. Dismiss 3.   Plaintiff also points to the statement by Administrator Blankenship that "[Plaintiff's] property is Commercial Concentration" as further evidence of the arbitrary and capricious nature of the Defendant's decisions.   Reply Supp. Mot. Prelim. Inj. 2–3, ECF No. 20.   Plaintiff specifically alleges that "the reason for . . . this new zoning was a hate driven de jure [sic] discrimination, without basis in law or fact, and the culmination of a conspiracy by the defendants with a group of 'neighbors'. . . ."   Am. Compl. ¶ 16(a).

For its part, Defendant argues that "[l]andowners only have a vested right in preexisting use of the land, they do not have a vested right 'in the continuation of the land's existing zoning status.'"   Mem. Supp. Mot. Dismiss 9 (quoting *Bd. of Zoning Appeals v. CaseLin Sys., Inc*., 501

S.E.2d 397, 400 (Va. 1998), superseded on other grounds by statute, 1998 Acts ch. 801). Defendant therefore asserts that Plaintiff "has failed to establish that (1) he had a property interest and (2) the Board's adoption . . . and the County's subsequent enforcement of [the] new zoning ordinance[] was so far beyond the limits of legitimate governmental action to constitute a violation of substantive due process." *Id.*   The Court agrees.

"In order to state a claim for a violation of due process, 'a plaintiff must allege sufficient facts to support a finding that the [plaintiff was] deprived of life, liberty, or property, by governmental action.'" *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 79 (4th Cir. 2016) (quoting *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 109 (4th Cir. 2011)).   "It is well-settled that the Fourteenth Amendment itself does not create property interests." *Tri-Cnty. Paving, Inc. v. Ashe Cnty.*, 281 F.3d 430, 436 (4th Cir. 2022).   "Rather, [property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).   Moreover, the mere fact that a deprivation of a recognized property interest has occurred does not in and of itself establish a substantive due process claim; rather, "in the context of a zoning action involving property, it must be clear that the state's action 'has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense.'" *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 827 (4th Cir. 1995) (quoting *Nectow v. Cambridge*, 277 U.S. 183, 187–88 (1928)).

The Court begins its inquiry with the question of whether Plaintiff had a cognizable property interest in the zoning classification of his property and, inherent in that, in his desired and/or anticipated use of his land.   *See* Am. Compl. ¶ 16 ("The actions of the [Defendant] in

September of 2021 to classify the [P]laintiff's property as a 'non-conforming property' was an arbitrary, capricious, and irrational act with no reasonable relation to the County's Comprehensive Development Plan . . . .").   Virginia law is clear in its answer:   Plaintiff does not.

"Privately held land is subject to applicable local zoning ordinances whether enacted before or after the property was acquired."   *Caselin Sys*., 501 S.E.2d at 400.   "Generally, landowners have no property right in anticipated uses of their land since they have no vested property right in the continuation of the land's existing zoning status."   *Id*. (first citing *Snow v. Amherst Cnty. Bd. of Zoning Appeals*, 448 S.E.2d 606, 608–09 (Va. 1994); and then citing *Town of Vienna Council v. Kohler*, 244 S.E.2d 542, 548 (Va. 1978)).   "However, in limited circumstances, private landowners may acquire a vested right in planned uses of their land that may not be prohibited or reduced by subsequent zoning legislation."   *Id*.   These "limited circumstances" require "a significant official governmental act . . . manifested by the issuance of a permit or other approval authorizing the landowner to conduct a use on his property that otherwise would not have been allowed" and for the landowner to establish that he "diligently pursued the use authorized by the government permit or approval and incurred substantial expense in good faith prior to the change in zoning."   *Id.* (quoting *Snow*, 448 S.E.2d at 608).

Here, although Plaintiff has alleged that he proactively met with members of the Henrico County Board of Supervisors and the County Manager's office to "inquire about changes to zoning that could affect [his] ability to use the property" and was reassured that he "could complete any project that had . . . previously been started prior to any code changes," Am. Compl. Ex. B, he has not established a vested property right.   Specifically, there is no allegation that Plaintiff obtained "a permit or other approval" authorizing some otherwise *unallowed* use.   The understanding Plaintiff reached from his meeting with County representatives on August 8, 2019, simply affirmed

20

that any then-permissible agricultural use would not be disrupted by a subsequent zoning change, and that Plaintiff could complete work that had been begun prior to any such change. *See id.* There is no indication that Plaintiff sought and received approval for a pre-2021 non-conforming use. And although Plaintiff certainly "diligently pursued the [agricultural] use" authorized by his prior permissive zoning classification, *Caselin Sys.*, 501 S.E.2d at 400, any substantial expenses he incurred *after* the change in zoning, e.g., the construction of his "high tunnel," do not satisfy the *Snow* formula for creating a vested property interest, regardless of the encouragement Plaintiff alleges he received from the Henrico General District Court judge. *See id.* (landowner must establish that he "diligently pursued the use authorized by the government permit or approval and incurred substantial expense in good faith *prior to* the change in zoning" (emphasis added) (quoting *Snow*, 448 S.E.2d at 608)).

Finally, even assuming *arguendo* that a violation of a recognized property interest occurred, Plaintiff's allegations do not give rise to a reasonable inference that the zoning change "ha[d] *no* foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense." *Sylvia Dev. Corp.*, 48 F.3d at 827 (emphasis added) (quoting *Nectow*, 277 U.S. at 187–88). Plaintiff relies on *Yick Wo v. Hopkins* to argue that the zoning ordinance, "passed with an 'evil eye and an unequal hand'" violated Plaintiff's substantive due process rights. Reply Supp. Mot. Prelim. Inj. 3 (citing generally *Yick Wo*, 118 U.S. 356 (1886)). But Plaintiff's case is distinguishable from *Yick Wo* because, in that case, "*no* reason for [the challenged ordinance] exist[ed] *except* hostility to the race and nationality to which the petitioners belong[ed], and which in the eye of the law is not justified." 118 U.S. at 374 (emphasis added). In Plaintiff's case, in contrast, there are numerous reasons for the ordinance in question, as set out at the Henrico Zoning

Ordinance's "Purpose and Intent" sections, even if Plaintiff disagrees with the merit of those reasons, e.g., "Facilitat[ing] the creation of a convenient, attractive, and harmonious community;" *see* Zoning Ordinance § 24-1104(C); "Provide screening between potentially incompatible uses of land," *id.* § 24-5301(A); and "enhance[ing] the appeal and economic value of properties in the County," *id.* § 24-5301(I).   Thus, Plaintiff's allegations also fail to give rise to a plausible inference that the zoning change was a "mere arbitrary or irrational exercise of power," *Sylvia Dev. Corp.*, 48 F.3d at 827.

Based on the foregoing, the Court finds that Plaintiff has not alleged sufficient facts to state a claim for a violation of his substantive due process rights, and he is therefore unlikely to succeed on the merits of Count Two, as well.

### c.   Counts Three & Four: Conspiracy Against Rights & Business Conspiracy

As previously mentioned, Plaintiff appears to rest his third cause of action, "Conspiracy Against Rights," on 18 U.S.C. § 241, while his fourth cause of action, "Business Conspiracy," contains no cited basis in law.   Am. Compl. 12, ¶¶ 17–19.   Plaintiff cannot base a civil cause of action on a criminal statute.   *See Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution."); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the [criminal] prosecution or nonprosecution of another.").   In seeming acknowledgment of this, Plaintiff endeavors to convert the claim to one resting on 42 U.S.C. § 1985(3).   *See* Reply Supp. Mot. Prelim. Inj. 3.   Plaintiff likewise endeavors to invoke § 1985(3) to preserve his erstwhile business conspiracy claim.   *Id.*   And though a party generally may not amend their complaint through subsequent briefing, *see Hurst v. District of Columbia*, 681 F. App'x 186, 194 (4th Cir. 2017), the Court gives Plaintiff's Amended Complaint the "liberal" construction it is due, *Erickson*

*v. Pardus*, 551 U.S. 89, 94 (2007), and in so doing will accept and apply the § 1985 legal framework for these claims.   Even with this liberal construction, however, the Court does not find that these claims have a likelihood of success on the merits.

Section 1985 of the United States Code, Chapter 42, provides a cause of action for individuals who have been the subject of a conspiracy to deprive them of the equal protection of the laws of the United States.   To establish a cause of action under § 1985(3), a plaintiff must allege:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.   Moreover, the law is well settled that to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights.

*Simmons v. Poe*, 47 F.3d 1370, 1376–77 (4th Cir. 1995) (citations omitted).   The Fourth Circuit has further elaborated on the level of specificity required to sufficiently plead a conspiracy:

> [W]here a conspiracy is alleged, the plaintiff must plead facts amounting to more than "parallel conduct and a bare assertion of conspiracy . . . . Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."   The factual allegations must plausibly suggest agreement, rather than being merely consistent with agreement.

*A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (omission in original) (quoting *Twombly*, 550 U.S. at 556–57).

Here, Plaintiff asserts that members of the Board "through the use of their administrative authority entered into a conspiracy," and that Defendant Lisa Brown, Plaintiff's neighbor, "convinced neighbors to pressure county officials to use the police power of the state to harass and intimidate the Plaintiff in a campaign to dislodge or interfere with the free exercise of Plaintiff['s] property rights."   Am. Compl. 12, ¶ 18.   Plaintiff further alleges that "[t]he [a]ction of Henrico

County . . . to rezone the Plaintiff['s] property . . . and pass an ordinance to target the [P]laintiff['s] fence was [the] culmination of a conspiracy by the Defendants . . . ."   *Id*. ¶ 19.

Critically, Plaintiff's allegations lack any reference to Defendants being "motivated by a specific class-based, invidiously discriminatory animus."   *Simmons*, 47 F.3d at 1376–77.   The block-quoted excerpt from the BZA Minutes that Plaintiff provides in support of his conspiracy claim in fact undermines any argument for specific animus, in that it references acknowledgment by Plaintiff's neighbors "that [Plaintiff's] '[F]arm' *would not be affected by the change* because it was established before the Zoning Ordinance was changed . . . ."   Am. Compl. 13, ¶ 19 (emphasis added).   Plaintiff also fails to allege facts to show the required "meeting of the minds."   *Simmons*, 47 F.3d at 1377.   His allegations concerning Defendant Brown are highly conclusory, and the fact that a bus drove by his property when he was there and honked and that someone on the bus waved only amount, without more, to the mere "parallel conduct" that does not adequately support an allegation of conspiracy.   *Soc'y Without A Name*, 655 F.3d at 346.

All told, Plaintiff 's allegations in Counts Three and Four fail to state any cognizable claim for conspiracy, and Plaintiff therefore has no likelihood of success on the merits on these counts.

### d.   Count Five: Procedural Due Process

Plaintiff's fifth and final cause of action is a claim for "procedural due process."   Am. Compl. 13, ¶¶ 20–26.   Plaintiff asserts that the re-zoning of his property violated his rights guaranteed by the United States Constitution, the Virginia Constitution, Virginia Code provisions, and "an Ordinance of the County of Henrico."   *Id*. ¶ 20.   This claim fails for reasons similar to Plaintiff's substantive due process claim.

"For procedural due process claims, 'the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is

unconstitutional is the deprivation of such an interest *without due process of law*.'"   *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 80 (4th Cir. 2016) (emphasis in original) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).   Even so, procedural due process rights—like substantive due process rights—"are triggered by a legitimate claim of entitlement to a property interest."   *Id*.   For the reasons discussed *supra* Part IV.A.2.b., the Court finds that Plaintiff did not have a cognizable property interest in the zoning classification of his property and, through that, in his desired and/or anticipated use of his land, i.e., the unfettered use of his property for agricultural pursuits.

Yet again assuming *arguendo* that Plaintiff had alleged deprivation of a legitimate property interest, however, Plaintiff's claim is still critically undercut by his conclusory misapprehension of the zoning change that took place.   The "notice requirement" Plaintiff quotes from an uncited Henrico County "ordinance" applies only to "property being rezoned" and "property adjacent to the site which is the subject of a Rezoning or Provisional Use Permit request."   Am. Compl. 13–14, ¶ 20.   Similarly, the Virginia Code provision on which Plaintiff relies applies to zoning ordinance amendments "involv[ing] a change in the zoning map classification of 25 or fewer parcels of land . . . ."   *Id*. at 15, ¶ 22.   Yet fatally for Plaintiff—his legal conclusions to the contrary aside—the facts alleged in the Amended Complaint and those revealed by the documents he attached thereto reveal that his property was *not* in fact *rezoned*.   *See Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234–35 (4th Cir. 2004) (where a plaintiff attaches or incorporates a document into their complaint, it is proper to accept the contents of the document over conflicting allegations in the Complaint).

Specifically, the Amended Complaint alleges that "[t]he property consists of two lots, each 0.6 acre (1.2 acres total).   It is zoned R-3 one family residence district. . . . Although the property

is zoned R-3, it is designated on the comprehensive plan for Commercial Concentration."   Am. Compl. 2.   "The zoning ordinance allows 'farming' as a principal permitted use in the R-0 through R-4A One Family Residence Districts."   *Id.*   Exhibit C to the Amended Complaint then explains that "[t]he new Zoning Ordinance, effective September 2021, prohibits farming as a principal use in the One-Family Residence Districts."   Am. Compl. Ex. C., ECF No. 6-3.   Thus, the Amended Complaint itself reveals that no *zoning* change occurred.   Rather, the revised Zoning Ordinance simply changed the "principal permitted use[s]" applicable to the pre-designated zone (R-3).   As a result, the Henrico County Ordinance and Virginia Code provisions Plaintiff relies upon are inapposite.

Finally, Plaintiff's "unconstitutional taking" arguments relying on the United States Constitution and Virginia's Constitution, Am. Compl. 16, ¶¶ 25–26, would also necessarily fail, as they disregard the fact—once again disclosed by Plaintiff's own allegations—that Plaintiff's Farm was grandfathered-in under the revised Zoning Ordinance.   *See id.* 13, ¶ 19 (noting that Plaintiff's neighbors "understood that [Plaintiff's] '[F]arm' would not be affected by the change because it was established before the Zoning Ordinance was changed . . . ."); Am. Compl. Ex. C (same, and further cautioning that "any fences or walls installed prior to September 2021 are subject to the ordinance in effect at the time of their construction," but remarking that Plaintiff had been notified "that fences constructed, reconstructed, or replaced after September 1, 2021, must comply with the new regulations"); Am. Compl. Ex. A (letter to Plaintiff reiterating the distinction, for purposes of determining the applicable zoning ordinance, between fencing built prior to September 1, 2021, and any fencing constructed after that date).

For all these reasons, Plaintiff has failed to state a claim for a procedural due process violation, and therefore he cannot demonstrate any likelihood of success on the merits.

3.   Conclusion of the *Winter* Analysis

Because Plaintiff has failed to state any claim upon which relief may be granted, he has simultaneously failed to establish any likelihood of success on the merits—the critical first step of the preliminary injunction analysis under *Winter*.   And because the failure to show any one of the relevant *Winter* factors mandates denial of the preliminary injunction, *Real Truth*, 575 F.3d at 346, the Court must deny Plaintiff's Motion for Preliminary Injunction.

**B.   Motion to Dismiss**

Because of the merit-focused nature of the preliminary injunction inquiry, the outcome of the Court's *Winter* analysis is dispositive of the Motion to Dismiss.   *See Lux v. Rodrigues*, 736 F. Supp. 2d 1042, 1050 (E.D. Va. 2010).   Based on the foregoing analysis, therefore, this Court finds that the Amended Complaint fails to state a claim for relief that is plausible on its face.   *See Twombly*, 550 U.S. at 570.   As such, the Court will grant Defendant's Motion to Dismiss, in full.

**C.   Motion to Amend**

Under Federal Rule of Civil Procedure 15(a)(2), a court "should freely give leave" to amend "when justice so requires."   The Supreme Court has emphasized that "this mandate is to be heeded."   *Foman v. Davis*, 371 U.S. 178, 182 (1962).   In accordance with this pronouncement, the Fourth Circuit's policy is to "liberally allow amendment."   *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (citing *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010)).   Thus, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."   *Johnson v. Oroweat Foods Co*., 785 F.2d 503, 509 (4th Cir. 1986). "A proposed amendment is futile when it is 'clearly insufficient or frivolous on its face[,]'" *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp*., 914 F.3d 213, 228 (4th Cir. 2019) (quoting *Oroweat*

*Foods*, 785 F.2d at 510), or "if the claim it presents would not survive a motion to dismiss." *Id*. (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)).    As explained below, Plaintiff's proposed amendments do not materially change the analysis conducted with respect to Plaintiff's Motion for Preliminary Injunction and Defendant's Motion to Dismiss, above, and are otherwise unable to withstand 12(b)(6) scrutiny.    Thus, amendment would be futile.

Plaintiff's proposed amendments are minimal.    *See* Proposed Fourth Am. Compl.,[15] ECF No. 25-1; *see also* Def.'s Opp. Mot. Amend 3, ECF No. 26 (summarizing the proposed changes); Def.'s Opp. Ex. 1, ECF No. 26-1 (copy of Plaintiff's proposed Fourth Amended Complaint, with the additions and alterations highlighted).    Plaintiff clarifies his prior allegation, *see* Am. Compl. 6, ¶ 12, that the zoning ordinance amendment (making Plaintiff's existing agricultural use of the Farm permitted but non-conforming) was an illegal policy for purposes of stating a *Monell* claim,[16] *see* Proposed Fourth Am. Compl. 19, ¶ 41, ECF No. 25-1.    Plaintiff includes a handful of additional conclusory references to the alleged conspiracy at play, *see, e.g., id.* at 11, ¶ 23; *id.* at 16, ¶ 34; *id.* at 17–18, ¶¶ 38, 39, and formally amends Count Three to rest on 42 U.S.C. § 1985(3), *id.* at 12–13, ¶ 27.    Plaintiff also added a header titled "Sixth Cause of Action: Violation of Vested Right: Taking," *id.* at 16, but the allegations underpinning this purportedly new count were all contained in the original Amended Complaint.    *Compare* Am. Compl. 15–16, ¶¶ 23–26, *with*

---

[15] Although Plaintiff titles the submission as his Fourth Amended Complaint, *see* ECF No. 25-1, if accepted, it would only be the Second Amended Complaint.    Nevertheless, the Court adopts Plaintiff's title for present purposes.

[16] A § 1983 claim against a municipality is commonly referred to as a "*Monell* claim."    *See Hunter v. Town of Mocksville*, 897 F.3d 538, 553 (4th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)) (noting that, for purposes of § 1983, "a municipality is considered a 'person' and thus is subject to suit").    The Court did not previously engage in a *Monell* analysis, because a necessary predicate to a *Monell* claim against a municipality is a violation of constitutional law, and—for the reasons discussed at length, *supra* Part IV.A.2.—Plaintiff failed to state any such claim.    *See Monell*, 436 U.S. at 690 ("[T]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution . . . .").    In short, *Monell* dictates that municipal liability attaches only where the "execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible for under § 1983."    *Monell*, 436 U.S. at 694; *see Hunter*, 897 F.3d at 553–54.

Proposed Fourth Am. Compl. 16–18, ¶¶ 35–38.   Plaintiff also added four new exhibits, ECF Nos. 25-3, 25-5, 25-6, and 25-9, but removed the Amended Complaint's current Exhibit A, ECF No. 6-1, from the mix.

None of the amended allegations or additional exhibits are sufficient to revive the claims the Court previously determined to be deficient in its Preliminary Injunction analysis, *supra*. Plaintiff's characterization of the amended Zoning Ordinance as an unlawful policy, procedure, custom, or practice cannot create a freestanding *Monell* claim when Plaintiff has not adequately alleged an underlying constitutional violation.   *Monell*, 436 U.S. at 690.   None of the additional allegations regarding the conspiracy at play satisfy the Fourth Circuit's standard for pleading a conspiracy.   *See A Soc'y Without A Name*, 655 F.3d at 346 (discussed *supra* Part IV.A.2.c.). Plaintiff's amendment of Count Three to formally rely on § 1985 in unavailing, as the Court has already given Plaintiff the benefit of the citation in assessing his conspiracy claims.   *See supra* Part IV.A.2.c.   And the addition of a header referencing a "Takings" claim is patently insufficient to state a claim, where the underpinning allegations failed to do so previously.   Finally, nothing in the newly added exhibits overcomes the above-discussed deficiencies.

Because amendment by way of the Proposed Fourth Amended Complaint would be futile, the Court will deny Plaintiff's Fourth Motion to Amend.

## V.   CONCLUSION

For the reasons set forth above, the Court will deny the Motion for Preliminary Injunction, grant Defendant's Motion to Dismiss, and deny Plaintiff's Fourth Motion to Amend.

An appropriate Order shall accompany this Memorandum Opinion.

/s/

Roderick C. Young
United States District Judge

Dated: September 27, 2024
Richmond, Virginia

29