IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PATRICK BOUVIER JOHNSON,  )
    Plaintiff,  )
      )
    v.  )    Civil Action No. 3:23CV679 (RCY)
      )
HENRICO COUNTY BOARD OF  )
SUPERVISORS, *et al.*,  )
    Defendants.  )
      )

## MEMORANDUM OPINION

This matter is before the Court on Defendant Lisa Brown's Motion to Dismiss.  The Court dispenses with oral argument because the facts and contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process.  E.D. Va. Loc. Civ. R. 7(J).  For the reasons set forth below, the Court will grant the Motion to Dismiss and dismiss the remainder of this action.

## I.   PROCEDURAL HISTORY

Plaintiff Patrick Bouvier Johnson filed his *pro se* Complaint in this Court on October 19, 2023.  ECF No. 1.  Plaintiff timely filed an Amended Complaint, ECF No. 6, on December 5, 2023, which, among other changes, added Defendant Lisa Brown to the action.  Plaintiff then filed a Motion for Preliminary Injunction, ECF No. 13, on December 8, 2023.[1]  Despite his pursuit of injunctive relief, however, Plaintiff did not obtain a summons from the Clerk's Office

---

[1] Plaintiff also subsequently filed two [Motions for] Leave to File Second Amended Complaint, ECF Nos. 11, 12, which each were accompanied by a proposed amended complaint "amend[ing] minor errors and omission[s] found in [the] first amended complaint."  Mot. for Leave 1, ECF No. 11.  After Defendant Henrico County Board of Supervisors ("Board of Supervisors" or "the Board") filed a Response in Opposition to the proposed amendment(s), ECF No. 17, Plaintiff filed for leave to withdraw the requests to amend, ECF No. 19, which the Court granted, *see* ECF No. 21, thereby affirming the first Amended Complaint, ECF No. 6, as the operative complaint for all purposes moving forwards.

for Defendant Brown until February 7, 2024, and he did not complete service on Defendant Brown

until April 19, 2024.   ECF No. 34.

The Court refrained from immediately engaging with Plaintiff's Motion for Preliminary

Injunction because Plaintiff had yet to serve Defendant Brown.   *See* Fed. R. Civ. P. 65(a)(1) "The

court may issue a preliminary injunction *only* on notice to the adverse party." (emphasis added)).

On April 3, 2024, Plaintiff filed a Request for Expedited Preliminary Injunction Decision, ECF

No. 29, having still neither served Defendant Brown nor given any indication of the status of his

efforts to do so.   Given that the time to serve Defendant Brown under Federal Rule of Civil

Procedure 4(m) had then passed, the Court obliged, and on April 5, 2024, it issued an Order

Denying Plaintiff's Motion for Preliminary Injunction, ECF No. 30, promising a full opinion to

follow.   The Court later issued that full opinion and simultaneously granted Defendant Henrico

County Board of Supervisors' ("the Board's") Motion to Dismiss.   ECF Nos. 41, 42.

On April 22, 2024, after the Court denied the Motion for Preliminary Injunction, Plaintiff

filed proof of service as to Defendant Brown, indicating that she had been served on April 19,

2024.   ECF No. 34.   That same day, Defendant Brown appeared and filed the instant Motion to

Dismiss and Memorandum in Support thereof.   ECF Nos. 32, 33.   On May 6, 2024, Plaintiff

filed an "Unsworn Declaration" responding to the Motion to Dismiss, ECF No. 36, followed by a

more traditionally formatted Response to Lisa Brown's Motion to Dismiss ("Response in

Opposition"), ECF No. 37.[2]   Defendant Brown filed a Reply on May 10, 2024, ECF No. 38,

rendering the Motion to Dismiss ripe for review.[3]

---

[2] The Response in Opposition appears to be identical in substance to the Unsworn Declaration; it simply changed the format of the earlier filing to that of a more traditional response brief.   As such, the Court primarily considers the latter filing, ECF No. 37, in resolving the Motion to Dismiss.

[3] Plaintiff subsequently—and without seeking leave of court—filed a Second Response to Lisa Brown's Motion to Dismiss ("Plaintiff's Sur-Reply"), ECF No. 39, accompanied by another Unsworn Declaration ("Sur-Reply Declaration"), ECF No. 40.   The Local Rules prohibit the filing of sur-replies without leave of court.   E.D. Va. Loc.

## II.   FACTUAL ALLEGATIONS

Plaintiff purchased two parcels of land in Henrico County, Virginia, in 2013, with the intent to use the land for agricultural production.   Am. Compl. 1.   The parcels, which are located at 11 Early Avenue and 21 Early Avenue, Sandston, VA 23150, were situated in a residential area "zoned R-3 one family residence district."   *Id*. at 2.   Despite this residential zoning, the property "is designated on the comprehensive plan for Commercial Concentration"—to that effect, it is bordered on two sides by residences and on the other two sides by businesses.   *Id*.   The then-applicable zoning ordinance allowed "'farming' as a principal permitted use in the R-0 through R-4A One [F]amily Residence Districts."   *Id*.   Based on this zoning, Plaintiff mailed the Henrico County Planning Department notice of his intended farming-oriented changes to the property and, after receiving no response, began clearing the property in August of 2014.   *Id*. at 4–5.   Plaintiff has been growing fruits and vegetables on the land (hereinafter, "Farm") since that time.   *Id*. at 4, ¶ 1.

Plaintiff's Farm began receiving negative attention from the County in approximately 2019, when Plaintiff received a call from County Manager John Vithoulkas, who stated that he was going to condemn Plaintiff's Farm.   *Id*. ¶ 2.   Plaintiff asked for a meeting with Mr. Vithoulkas, and at the subsequent meeting he discussed with Mr. Vithoulkas the fact that there was no evidence that Plaintiff's Farm was negatively impacting property values in the area.   *Id*.   Also in 2019, Plaintiff met with then-Chairman of the Henrico County Board of Supervisors ("Board"),

---

Civ. R. 7(F)(1) ("No further briefs or written communications may be filed without first obtaining leave of Court."). "Sur-replies . . . are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on the matter."   *Trs. of Columbia Univ. v. Symantec Corp.*, 2019 WL 13189619, at *2 (E.D. Va. Oct. 10, 2019). "Generally, courts allow a party to file a sur-reply only when fairness dictates based on new arguments raised in the previous reply."   *Dillard v. Kolongo*, 2017 WL 2312988, at *6 (E.D. Va. May 25, 2017).   Although this Court recognizes Plaintiff's *pro se* status, Plaintiff is nevertheless obligated to abide by the Local Rules.   In any event, Defendant Brown's Reply to Plaintiff's Response to the Motion to Dismiss introduced no new arguments or new material for which a sur-reply would be warranted.   Accordingly, this Court will not consider Plaintiff's Sur-Reply.

Tyrone Nelson, and the Board representative for the district encompassing Plaintiff's Farm, to

discuss various "abuses [Plaintiff] had suffered," to include: "illegal actions by the police,

Community Revitalization official giving the Plaintiff false and misleading information; refusal of

Planning and Zoning official to answer questions as to how the property could be developed as an

agricultural property; harassing phone calls [and] false complaints from neighbors" and "white

supremacists."   *Id*. ¶ 3; Am. Compl. Ex. B, ECF No. 6-2.   Plaintiff also "inquir[ed] about

changes to zoning that could affect [his] ability to use the property."   *Id*.   Plaintiff's takeaway

from this meeting was that there would be no zoning changes that would hinder his ability to use

his property for agriculture, and he could complete any project he started prior to any zoning

changes.   Am. Compl. Ex. B.   No further action was taken by the County or the Board at that

time.   *See generally id.*

In April of 2021, Plaintiff met with Mr. Vithoulkas and Joseph Emerson, Director of

Planning, at which time Mr. Emerson "confirmed that the property was being used for Agriculture"

and that the zoning permitted "up to 7200 square[foot] agricultural structures per parcel without a

permit."   Am. Compl. 5, ¶ 4.   Mr. Vithoulkas "also stated that the Plaintiff could install a gravel

parking lot and sell produce from the property. . . . [and] that the Plaintiff would not have to install

a convert[,] which was in keeping with other businesses in the area."   *Id*.

On September 1, 2021, a new Henrico County Zoning Ordinance took effect.   *See*, *e.g.*,

*id*. ¶ 16; *see also* Zoning Ordinance, Henrico County Code §§ 24-1101 through 24-8501, *available*

*at*  https://henrico.us/pdfs/countyattorney/Chpt024Zoning.pdf [4]  (showing  "Effective"  date  of

---

[4]  "A district court may clearly take judicial notice of . . . public records," *Witthohn v. Fed. Ins. Co.*, 164 F.
App'x 395, 397 (4th Cir. 2006) (affirming the review and consideration of state court records on a motion to dismiss),
and may otherwise consider on a 12(b)(6) analysis documents incorporated into the complaint, *Tellabs, Inc. v. Makor
Issues & Rights*, 551 U.S. 308, 322 (2007), and documents that are "integral to and explicitly relied on in the
complaint," *Phillips v. LCI Int'l*, 190 F.3d 609, 618 (4th Cir. 1999), even if the plaintiff failed to attach such
documents.   The Court finds this municipal zoning ordinance to constitute a public record.   In the alternative, it is
integral to Plaintiff's Amended Complaint, insofar as the alleged zoning changes give rise to Plaintiff's claims.

September 1, 2021).   Whereas the prior zoning ordinance included "farming" among the "allowed

uses" for R-3 One-Family Residence District properties, *see* Am. Compl. 2, the 2021 revised

ordinance only lists "one-family dwellings" and "supporting institutional, recreational, and public

facilities and uses" as "[a]llowed uses" in the R-3 zone.   Zoning Ordinance § 24-3309(A).

In March of 2022, Plaintiff began receiving Notices of Violation ("NOVs") from Henrico

County.   Am. Compl. 6, ¶ 5.   Plaintiff successfully disputed two of the NOVs:   one for having

left bags of leaves out (which Plaintiff was reserving for later use as organic mulch), and one for

having logs lying about the property (which Plaintiff was using to grow mushrooms).   *Id*.   Later

in 2022, however, Plaintiff received another NOV, this one for having "building materials" on the

property.   *Id*. ¶ 6.   Plaintiff attempted to dispute this NOV with Community Maintenance

Inspector Jason Alexander, arguing that he needed the materials for farm and equipment

maintenance and proposing that he build temporary structures to house the building materials.   *Id*.

This proposal was rejected, however, and Mr. Alexander told Plaintiff that "[he] was not allowed

to build anything."   *Id*.   Plaintiff subsequently "moved the items in question" and did not

construct the proposed structures, but it appears that the Farm remained in noncompliance and

Plaintiff "was taken to Henrico County District Court in May of 2022."   *Id*.

While the General District Court matter (concerning the building materials issue) was

pending, Plaintiff received another NOV, this time for his fence—specifically concerning its

height, setback, and construction-material deficiencies.   *Id*. ¶ 7; *see also* Am. Compl. Ex. A, ECF

No. 6-1 (Sept. 30, 2022 Letter to Plaintiff).   Plaintiff met with County representatives on

September 21, 2022, about the "outstanding violations."   Am. Compl. Ex. A.   The September 30,

2022 letter sent in follow-up to this meeting set out the applicable zoning ordinances, including a

recognition that "[f]encing built prior to September 1, 2021, is subject to . . . the previous zoning

ordinance," and it cautioned that this ordinance applied "regardless of the permitted agricultural use." *Id.* It further reiterated to Plaintiff that "outside storage of unused items is prohibited, and the fence located in the front yard will need to be shortened, moved to the side yard, or removed altogether to bring the [Farm] into compliance with the Henrico County code." *Id.*

Plaintiff asserts that, when he ultimately appeared in General District Court on the building materials violation, the presiding judge informed Plaintiff that, contrary to the statement by the Community Maintenance Inspector, Plaintiff *could* build structures and further "*encouraged* the Plaintiff to do so." Am. Compl. 7, ¶ 7 (emphasis added). According to Plaintiff, "[t]he case against [him] was eventually dismissed." *Id.*; *see also* Case Details, Case No. GC22018403-00 (Henrico Cnty. Gen. Dist. Ct., May 4, 2022).[5] In reliance on the statements from the General District Court judge, Plaintiff constructed two temporary sheds and accepted funding from the Natural Resource Conservation Service (NRCS) to construct a "high tunnel."[6] Am. Compl. 7, ¶ 7.

It was at the time Plaintiff began constructing the high tunnel that he learned[7] "that Henrico had changed his zoning from an agricultural use to nonconforming use." *Id.* Plaintiff alleges that he received no prior notification of the zoning change. *Id.* ¶ 20. At a subsequent Board of Zoning Appeals ("BZA") hearing on July 27, 2023, Henrico County Zoning Administrator Benjamin W. Blankenship commented that Plaintiff's Farm was in an area that had been "zoned 'commercial concentration'" since 2009. *Id.* ¶ 8. Plaintiff asserts that this statement is

---

[5] The Court properly takes judicial notice of these state court records and any other state court records cited *infra*. *Witthohn*, 164 F. App'x at 397.

[6] Plaintiff represents a high tunnel to be a "greenhouse-like structure." Am. Compl. 7, ¶ 7.

[7] Although the Complaint is not explicit, the Court infers that Plaintiff "found out" about the alleged zoning change through receipt of another NOV challenging his construction of the high tunnel and/or other structures. *See id.* ("Plaintiff has appealed both the having to remove the fence and the other structures to the Board of Zoning Appeals and currently to Henrico Circuit Court."); *see also id.* at 11, ¶ 15 (". . . the subject comparison property . . . has not been ordered or asked to remove or tear down its agricultural structures.").

"outrageous and erroneous."   *Id.*   Plaintiff appealed the BZA's ultimate July 27, 2023 decision, as well as an earlier decision from April, to the Henrico County Circuit Court.[8]   *Id.* ¶ 7; *see also* Case Details, IN RE: April 27, 2023 Decision, Case No. CL23003794-00 (Henrico Cnty. Cir. Ct., May 26, 2023); Case Details, IN RE: July 27, 2023 Decision, Case No. CL23005834-00 (Henrico Cnty. Cir. Ct., Aug. 25, 2023).   These appeals were not resolved until spring of 2024, approximately five months after Plaintiff filed the instant suit.   *See* Case Details, IN RE: April 27, 2023 Decision (February 9, 2024 dismissal); Case Details, IN RE: July 27, 2023 Decision (March 22, 2024 dismissal).

Separate from his issues with the Board and zoning, Plaintiff alleges various interactions with local police, as well as instances of unwarranted police surveillance of his property in 2015 and 2022.   *Id.* ¶¶ 9–10.   In 2015, a neighbor informed Plaintiff that "he saw Mr. Russell Teague[9] standing with a police officer on the street outside the Plaintiff['s] farm pointing at the main farm building.   Later that same week, the Plaintiff observed the police watching the property."   *Id.* ¶ 9.   A police lieutenant subsequently informed Plaintiff that the Farm had "been under surveillance and that no crime was being committed at the premises."   *Id.*   With respect to the 2022 incident, Plaintiff observed "a large bus type vehicle coming through the neighborhood . . . . The driver of the vehicle would honk[] a loud disturbing horn and on several occasions the Plaintiff notice[d] what appeared to be a single passenger of the vehicle wave at [him]."   *Id.* ¶ 10.   Plaintiff further observed this vehicle parked in the driveway of a neighbor who had been particularly outspoken in complaining about Plaintiff's farming—Defendant Lisa Brown.   *Id.*

---

[8] The Court is unclear from Plaintiff's Complaint and from available state court records which proceeding related to which NOV, but it can discern that, of the two appeals, one related to the fence issues and the other to Plaintiff's building activities.

[9] While it is unclear what position Mr. Teague may have held at the time of this incident, he appears to currently serve as an Existing Structures Inspector for Henrico County.   *See* Henrico County–Building Inspections Department–Staff Contact List, *available at* https://henrico.us/bldg/personnel/.

Specific to Defendant Brown, Plaintiff alleges that she is the neighbor who has "done the most complaining about the [F]arm." *Id.*; *see also* Am. Compl. Ex. B, ECF No. 6-2. Plaintiff alleges that he observed the allegedly intimidating vehicle described above parked in Brown's driveway twice. Am. Compl. ¶ 10. He further alleges that the rezoning that occurred in 2021 "was a hate driven de jure discrimination, without basis in law or fact, and the culmination of a conspiracy by the defendants with a group of 'neighbors' led by []Defendant Lisa Brown and other currently unnamed co-conspirators." *Id.* ¶ 16; *see also id.* ¶ 19. Plaintiff further alleges that "Defendant Lisa Brown, through meetings with neighbors and Henrico County Official[s]" fraudulently induced said neighbors to join a conspiracy against Plaintiff "by stating the Plaintiff 'stole' a portion of the Plaintiff['s] land from her." *Id.* ¶ 18. "Using fraud and false claims Defendant Brown convinced neighbors to pressure county officials to use the police power of the state to harass and intimidate the Plaintiff in a campaign to dislodge or interfere with the free exercise of Plaintiff['s] property rights." *Id.* Plaintiff asserts that individuals with Henrico County harassed him "to appease the hate driven Defendant Lisa Brown." *Id.* ¶ 28.

### III. STANDARD OF REVIEW

**A.    12(b)(5) – Insufficient Service of Process**

Rule 12(b)(5) provides the appropriate vehicle for a claim of untimely service. *Fuller v. Aliff*, 2014 WL 12918937, at *3 (E.D. Va. Apr. 16, 2014); Fed. R. Civ. P. 12(b)(5). A court ruling on a motion to dismiss pursuant to Rule 12(b)(5) should rely on the same principles that govern Rule 4. *Fuller*, 2014 WL 12918937, at *3 (citing 5B Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2004)).

**B.   12(b)(6) – Failure to State a Claim**

A motion to dismiss under Federal Rule 12(b)(6) should be granted if a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   A Rule 12(b)(6) motion "tests the sufficiency of a complaint and 'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"   *Johnson*, 682 F. Supp. 2d at 567 (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).   As such, the Court must accept all factual allegations contained in a complaint as true and draw all reasonable inferences in favor of the plaintiff.   *Id*.   However, pleadings that offer simply "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient to state a claim for relief.   *Twombly*, 550 U.S. at 555.

Generally, the Court does not contemplate extrinsic material when evaluating a complaint on a motion to dismiss.   However, the Court may consider documents incorporated into the complaint, *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007), matters of public record subject to judicial notice, *Philips v. Pitt Cnty. Mem'l Hosp*., 572 F.3d 176, 180 (4th Cir. 2009), and it may also consider any documents attached to the motion to dismiss if those documents are essential to the plaintiff's claims or are "sufficiently referred to in the complaint," as long as there is no challenge of their authenticity.   *Witthohn v. Fed. Ins. Co*., 164 F. App'x 395, 396–97 (4th Cir. 2006).   Moreover, where a plaintiff attaches or incorporates a document into their complaint, it is proper to accept the contents of the document(s) over conflicting allegations in the Complaint.   *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234–35 (4th Cir. 2004).

And, though it is true that pleadings by *pro se* plaintiffs must be held to a less stringent standard than those drafted by lawyers, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the pleadings must nevertheless set forth enough facts to state a claim.

## IV. ANALYSIS

### A. Insufficient Service

As cited above, a motion to dismiss under Rule 12(b)(5) incorporates the standards of Rule 4. Rule 4(m) controls the time for service of process, and provides in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.   But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).   Accordingly, Rule 4(m) makes "unambiguously clear" that even if a plaintiff fails to serve process within 90 days, the Court must extend the time for service of process if the plaintiff can show good cause for the failure.   *Robinson v. GDC, Inc.*, 193 F. Supp. 3d 577, 580 (E.D. Va. 2016).   Moreover, even absent a showing of good cause, the Court may, in its discretion, extend the time for service of process.   *Id*. at 583.

When making a good cause determination, courts will examine several relevant factors. *Id*. (citing *Madden v. Texas*, 498 U.S. 1301, 1305 (1991)).   Those factors include:   (i) the possibility of prejudice to the defendant, (ii) the length of the delay and its impact on the proceedings, (iii) the reason(s) for the delay and whether the delay was within the plaintiff's control, (iv) whether the plaintiff sought an extension before the deadline, (v) the plaintiff's good faith, (vi) the plaintiff's pro se status, (vii) any prejudice to the plaintiff, such as by operation of statutes of limitation that may bar refiling, and (viii) whether time has previously been extended. *Id*. (citing *Kurka v. Iowa Cnty*., 628 F.3d 953, 959 (8th Cir. 2010); *Newby v. Enron Corp*., 284 F.

10

App'x 146, 149–51 (5th Cir. 2008); *Carter v. Keystone*, 278 F. App'x 141, 142 (3d Cir. 2008);

*Melton v. Wiley*, 262 F. App'x 921, 924 (11th Cir. 2008)).

Here, the Court finds in its discretion that good cause warrants extending the service deadline, because the relevant factors weigh in Plaintiff's favor.   First, the delay has not prejudiced Brown.   When Plaintiff served Brown, the Court had not made any rulings in this case detrimental to Brown.   Moreover, Brown has not alleged any prejudice to her ability to litigate this case.   Additionally, it is not clear that the bulk of the delay is Plaintiff's fault, as it does not appear that summonses were issued by the Clerk's Office until February, almost two months after Plaintiff filed his Amended Complaint.   *See* ECF No. 28.   Beyond that delay, Plaintiff appears to have exercised at least some diligence in attempting to identify a process server, Pl.'s Resp. Opp'n 5, even if it was not the seemingly simple alternative avenue Defendant identified in her Reply, *see* Reply 2.   With respect to the remaining factors, the Court observes that Plaintiff is *pro se*, and further that, during the expiration of the period for service, Plaintiff was attempting to amend his complaint yet again, and—particularly given his *pro se* status—it is not unreasonable that he may have experienced confusion, rightly or wrongly, related to whether his pending motion(s) to amend tolled the period for service.   Accordingly, the Court will not dismiss the Complaint as to Brown based on the delay in service.

**B.   Failure to State a Claim**

Plaintiff's Amended Complaint sets out the following as his "Legal Claims":   (1) a Fourteenth Amendment Equal Protection claim, Am. Compl. ¶¶ 11–15; (2) a Fourteenth Amendment Substantive Due Process claim, *id*. ¶ 16; (3) a claim for "conspiracy against rights," citing 18 U.S.C. § 241, *id*. ¶¶ 17–18; (4) a "business conspiracy" claim, *id*. ¶ 19; and (5) a Procedural Due Process claim, *id*. ¶¶ 20–26.   In line with the very first sentence of the Amended

Complaint, the Court construes Plaintiff's equal protection and due process claims as claims brought pursuant to 42 U.S.C. § 1983, which is the vehicle by which an individual may sue state actors for violations of constitutional rights.   *See* Am. Compl. at 1 ("Comes now Plaintiff Patrick Johnson, pursuant to 42 U.S.C. § 1983, and files this Complaint . . . .").   And while Plaintiff cites an inapposite criminal statute as the basis for his "conspiracy against rights" claim and no legal basis whatsoever for his "business conspiracy" claim, out of deference to his *pro se* status, the Court construes these as claims brought pursuant to 42 U.S.C. § 1985(3), which creates a private right of action for individuals who suffer from a conspiracy to deprive them of the equal protection of the laws.[10]

As Defendant Brown aptly points out, relief via § 1983 is not available against her, as she is not a state actor.   Mem. Supp. Mot. Dismiss 3.   Thus, the only two discernable claims that could possibly stand against her are the two conspiracy claims the Court construes as lodged under § 1985.   For the reasons set forth below, however, the Court agrees that Plaintiff has failed to state a claim against Brown on either count of conspiracy, and so the Court will grant the Motion to Dismiss on 12(b)(6) grounds.

    1.   Statute of Limitations

Defendant Brown first adopts the argument of (now former) Defendant Board of Supervisors that Plaintiff's claims are barred by the applicable statute of limitations.   For the reasons articulated in detail in its prior opinion denying Plaintiff's Motion for Preliminary Injunction and granting the Board's Motion to Dismiss, the Court declines to grant Brown's

---

[10] Although Plaintiff does not explicitly rely on 42 U.S.C. § 1985 in his Amended Complaint, in his Response in Opposition, Plaintiff clarifies that he "alleges that the Defendant have engaged in a conspiracy as described in 42 U.S.C. § 1985(3)."   Pl.'s Resp. Opp'n 2–3.   And while a party generally may not amend their complaint through subsequent briefing, *see Hurst v. District of Columbia*, 681 F. App'x 186, 194 (4th Cir. 2017), out of deference to Plaintiff's *pro se* status and for ease of analysis the Court will accept and apply the § 1985 legal framework to these conspiracy claims.

Motion to Dismiss on this ground, finding that it is not apparent on the face of the Amended Complaint that the statute of limitations had expired as of the date Plaintiff brought suit. *See* Mem. Op., *Johnson v. Henrico Cnty. Bd. of Supervisors*, 2024 U.S. Dist. LEXIS 176092, at *16–19, __ F. Supp. 3d. __ (E.D. Va. Sept. 27, 2024), ECF No. 41.

    2.  <u>Failure to State a Claim</u>

The Court turns next to Defendant's argument that Plaintiff has failed to state any claim on which relief may be granted. For the same reasons the Court already articulated in its prior opinion granting the Board's Motion to Dismiss, the Court will similarly grant Brown's Motion to Dismiss.[11]

In the Amended Complaint, Plaintiff appears to rest his third cause of action, "Conspiracy Against Rights," on 18 U.S.C. § 241, a criminal statute, while his fourth cause of action, "Business Conspiracy," contains no cited basis in law. Am. Compl. 12, ¶¶ 17–19. Plaintiff cannot base a civil cause of action on a criminal statute. *See Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution."); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the [criminal] prosecution or nonprosecution of another."). In seeming acknowledgment of this, Plaintiff endeavors to convert the conspiracy claims into claims premised on 42 U.S.C. § 1985(3). *See* Pl.'s Resp. Opp'n 2–3. And though a party generally may not amend their complaint through subsequent briefing, *see Hurst v. District of Columbia*, 681 F. App'x 186, 194 (4th Cir. 2017), the Court gives Plaintiff's Amended Complaint the "liberal" construction it is due, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and in so doing will accept and

---

[11] As previously mentioned, Plaintiff's first, second, and fifth causes of action, as § 1983 claims, are inapplicable to Defendant Lisa Brown, a private citizen. The Court's analysis therefore focuses on Plaintiff's third and fourth causes of action.

apply the § 1985 legal framework for these claims.   Even with this liberal construction, however,

the Court does not find that Plaintiff has stated a claim on either count.

Section 1985 of the United States Code, Chapter 42, provides a cause of action for

individuals who have been the subject of a conspiracy to deprive them of the equal protection of

the laws of the United States.   To establish a cause of action under § 1985(3), a plaintiff must

allege:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-
> based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal
> enjoyment of rights secured by the law to all, (4) and which results in injury to the
> plaintiff as (5) a consequence of an overt act committed by the defendants in
> connection with the conspiracy.   Moreover, the law is well settled that to prove a
> section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the
> minds' by defendants to violate the claimant's constitutional rights.

*Simmons v. Poe*, 47 F.3d 1370, 1376–77 (4th Cir. 1995) (citations omitted).   The Fourth Circuit

has further elaborated on the level of specificity required to sufficiently plead a conspiracy:

> [W]here a conspiracy is alleged, the plaintiff must plead facts amounting to more
> than "parallel conduct and a bare assertion of conspiracy . . . . Without more,
> parallel conduct does not suggest conspiracy, and a conclusory allegation of
> agreement at some unidentified point does not supply facts adequate to show
> illegality."   The factual allegations must plausibly suggest agreement, rather than
> being merely consistent with agreement.

*A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (omission in original)

(quoting *Twombly*, 550 U.S. at 556–57).

Here, Plaintiff asserts that Defendant Lisa Brown, Plaintiff's neighbor, "convinced

neighbors to pressure county officials to use the police power of the state to harass and intimidate

the Plaintiff in a campaign to dislodge or interfere with the free exercise of Plaintiff['s] property

rights."   Am. Compl. 12, ¶ 18.   Plaintiff claims that the rezoning that occurred in 2021, which

resulted in his subsequent receipt of various NOVs, "was a hate driven de jure discrimination,

without basis in law or fact, and the culmination of a conspiracy by the defendants with a group of

14

'neighbors' led by []Defendant Lisa Brown and other currently unnamed co-conspirators." *Id*. ¶ 16.   He alleges that Defendant Brown fraudulently induced said neighbors to join into the alleged conspiracy against Plaintiff "by stating the Plaintiff 'stole' a portion of the Plaintiff[']s] land from her."   *Id*. ¶ 18.

Critically, Plaintiff's allegations lack any reference to Defendant Brown—or any other party—being "motivated by a specific class-based, invidiously discriminatory animus." *Simmons*, 47 F.3d at 1376–77.   The block-quoted excerpt from the BZA Minutes that Plaintiff provides in support of his conspiracy claim in fact undermines any argument for specific animus, in that it references acknowledgment by Plaintiff's neighbors "that [Plaintiff's] '[F]arm' *would not be affected by the change* because it was established before the Zoning Ordinance was changed . . . ."   Am. Compl. 13, ¶ 19 (emphasis added).   Plaintiff's allegations of "de jure discrimination" are conclusory and unsupported by any other factual allegations, and are thus not entitled to a presumption of truth.[12]

Even assuming *arguendo* that the Court considered and deemed sufficient the race-based allegations Plaintiff raises in his Response in Opposition to the Motion to Dismiss, his claims would still be deficient, because he also fails to allege facts to show the required "meeting of the minds."   *Simmons*, 47 F.3d at 1377.   His allegations concerning Defendant Brown relative to other neighbors and/or the Board of Supervisors are highly conclusory, and the fact that a bus drove by his property when he was there and honked, and that someone on the bus waved in his

---

[12] The Court acknowledges that Plaintiff attempts to inject additional facts by way of his response to the Motion to Dismiss concerning his race and further statements by Defendant Brown that Plaintiff "stole" her land. Pl.'s Resp. Opp'n 2, ECF No. 37.   However, Plaintiff cannot expand his allegations by way of a response to a motion to dismiss.   *See Hurst v. District of Columbia*, 681 F. App'x 186, 194 (4th Cir. 2017) (holding that "a plaintiff may not amend her complaint via briefing") (citing *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)); *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

direction, only amount, without more, to the mere "parallel conduct" that does not adequately support an allegation of conspiracy. *A Soc'y Without A Name*, 655 F.3d at 346.

All told, Plaintiff's allegations in Counts Three and Four fail to state any cognizable claim for conspiracy, and Plaintiff therefore has failed to state a claim on these counts.

## V.   CONCLUSION

For the reasons set forth above, the Court will grant Defendant Brown's Motion to Dismiss for failure to state a claim.   Because this disposes of the remaining claims in this action, the Court will further dismiss the action in its entirety.[13]

An appropriate Order shall accompany this Memorandum Opinion.

_____ /s/ RCY

Roderick C. Young
United States District Judge

Date: January 27, 2025
Richmond, Virginia

---

[13] The Court previously denied Plaintiff leave to amend.  Mem. Op., *Johnson v. Henrico Cnty. Bd. of Supervisors*, 2024 U.S. Dist. LEXIS 176092, at *40–43, __ F. Supp. 3d at __, ECF No. 41.  That rationale applies with equal force here, even absent a pending motion or specific request for leave to do so.